IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


LENZIE HAWK, *et al.*,                    :

    Plaintiffs,                    :
                                          Case No. 3:06cv301

      vs.                         :
                                          JUDGE WALTER HERBERT RICE

THE NCR CORPORATION,                     :

    Defendant.                    :

---

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (DOC. #35) AND SUSTAINING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (DOC. #36); JUDGMENT TO
BE ENTERED ON BEHALF OF PLAINTIFFS AND AGAINST
DEFENDANT; TERMINATION ENTRY

---

A group of retired employees and spouses of retired employees have brought

this class action suit[1] against The NCR Corporation ("NCR"), alleging that NCR

wrongfully eliminated retiree life insurance benefits, in violation of the terms of a

Collective Bargaining Agreement ("CBA") that was in effect at the time of the

retirees' retirements, and in violation of NCR's fiduciary and other duties under the

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*,

---

[1]This Court certified the class, which consists of two subclasses, pursuant
to a stipulation between the parties. Doc. #14; Not. Order, dtd. Apr. 7, 2008. The
first subclass includes all retirees within the class, who NCR contends released
their claims by entering into a Separation Agreement with NCR or the designated
beneficiaries of such retirees who died after January 1, 2004. The second
subclass includes the remaining retirees within the class, who did not enter into a
Separation Agreement with NCR or the designated beneficiaries of such retirees
who died after January 1, 2004. Doc. #14.

and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.[2] Doc. #1.

The question presented, in this litigation, is whether the retirees had a vested interest in the life insurance benefits, under the CBA. Each of the parties has moved for summary judgment, with the Plaintiffs arguing that the retirees had such vested interests (Doc. #36) and NCR arguing to the contrary (Doc. #35).

The Court will initially set forth the applicable terms of the CBA, followed by a review of the standard under which it must assess the parties' Motions. It will then conclude with an analysis of how the facts of this case fit within the parameters of the applicable law.


I.    CBA Terms[3]

At issue in this litigation is a CBA that was entered into between NCR and Local Union No. 1616 (the "union", of which the Plaintiff retirees were formerly members), effective between June 1995, and August 2000 ("CBA" or

_____

[2]A related case, McCormick, et al. v. The NCR Corporation, has been filed with this Court as case number 3:06cv297, with the same Defendant and the same legal issues, but with retirees under earlier CBAs, as the Plaintiffs.

[3]Both parties have moved for summary judgment. When ruling on the Plaintiffs' Motion, the Court will consider the facts and circumstances giving rise to such Motion in the manner most favorable to the Defendant, as the party against whom the Motion is directed and, conversely, when ruling on the Defendant's Motion, the Court will consider the facts and circumstances giving rise to such Motion in the manner most favorable to the Plaintiffs. Servo Kinetics, Inc. v. Tokyo Precision Instruments, 475 F.3d 783, 790 (6th Cir. 2007).

"Agreement").[4] Doc. #1 (Compl.) ¶9.  The termination of the CBA resulted from the termination of the collective bargaining relationship, which occurred when NCR decided to contract out all of its bargaining unit work.[5] Doc. #36-5 (Hawk Dep.) at 5-6; Doc. #36-6 (Sep. Agt.).  NCR continued providing retiree life insurance benefits beyond the expiration of the collective bargaining relationship, until it notified the class members, by letter dated October 10, 2003, that it was terminating those benefits, effective December 31, 2003. Doc. #36-8 (Kriner Dep.) at 2; Doc. #36-9 (NCR Ltr, dtd. Oct. 10, 2003).[6]  A review of the pertinent terms

---

[4]Portions of the 1995 CBA are filed at Document #35-11 and Document #36-4.

[5]At the time of the termination, NCR and the union negotiated an agreement ("Separation Agreement"), which governed the termination of the collective bargaining relationship. Doc. #36-6 (Sep. Agt.).  Under the terms of that Agreement, employees eligible to retire (including the first subclass of Plaintiffs to this lawsuit, as explained *supra*, footnote 1) were required to execute a release of claims against NCR, in order to receive separation benefits. Doc. #36-5 (Hawk Dep.) at 21; Doc. #36-7 (Release).  That release did not impact the entitlement to benefits under the CBA, in that it provided as follows:  "In exchange for the benefits provided under the [Separation] Agreement, which are in addition to those benefits to which I would be entitled under the 1995 [CBA], I agree to the following . . ." Doc. #36-7 (Release).  Because the releases signed pursuant to the Separation Agreement did not alter the benefits the signatories received under the CBA, the Court will not distinguish between the two subclasses of Plaintiffs, in this lawsuit, when ruling herein.

[6]Both parties have set forth extrinsic evidence for the Court's consideration. As the Sixth Circuit instructs,

In interpreting collective bargaining agreements, we consider the language of the agreement, the context in which that language appears and other traditional canons of construction.  If, after applying these rules of interpretation, the contract remains ambiguous, we

of that CBA and a handbook that accompanies that Agreement follows.

A.   "During the Life of this Agreement" Language

Section 18.01(A) of the Agreement is entitled "Group Benefits" and reads (in

a notably confusing manner), in its entirety, as follows:

> The Summary Plan Description:  Group Benefits Plan for employees of NCR Corporation at Dayton, Ohio represented by the UAW Local 1616 and the Summary Plan Description:  Retirement Plan for employees of NCR Corporation at Dayton, Ohio represented by the UAW Local 1616 will be provided for the employees represented by the Union at the Company's Dayton, Ohio facility as outlined and subject to the conditions in the Summary Plan Descriptions.  During the life of this Agreement, no change which will reduce or diminish the benefits or privileges provided by the plan may be made without the agreement of the Union, provided, however, that nothing hereby shall be construed to require the Company to bargain during the life of this Agreement, upon the request of the Union on any change in the plan.

Doc. #36-4 at 2 (emphasis added).

B.   Life Insurance Entitlement

One section of the handbook that accompanies the CBA states that retirees

"will receive . . . retiree life insurance at no cost", if they satisfy certain conditions.

---

permit the parties to introduce extrinsic evidence about their original understanding of the contract's terms.

Prater v. Ohio Educ. Ass'n, 505 F.3d 437, 441 (6th Cir. 2007) (citing McCoy v. Meridian Auto. Sys., 390 F.3d 417, 422 (6th Cir. 2004)).  Thus, the Court will limit its review to the express terms of the Agreement in question, unless it finds that Agreement to be ambiguous.

Doc. #36-4 at 7 (emphasis added).  Another section provides as follows:

> An Employee who terminates employment after age 55 for any reason other than total and permanent disability with five or more years of service shall be provided life insurance coverage of $10,000.  If an Employee retires after receiving total and permanent disability benefits that "draw down" the life benefit, the retiree life insurance coverage shall be the lesser of $10,000 or the amount of his or her reduced life benefit.

Id. (emphasis added).

C.    Tie Between Eligibility for Pension Benefits and Eligibility for Life Insurance Benefits

In the "General" chapter and in a section entitled "Benefits After

Retirement", the handbook provides as follows:

> You will receive . . . retiree life insurance at no cost if you meet all of the following conditions:
>
> - You are at least age 55
> - You are eligible to retire under the Retirement Plan [and]
> - You retire from total and permanent disability or active employment with the Company and immediately begin receiving monthly pension benefits from the Retirement Plan . . . .

Doc. #36-4 at 7 (emphasis on "all" in original, other emphasis added).

D.    Termination Provisions

Without mentioning life insurance benefits, the handbook provides that the

following benefits end on the last day of active employment:  dental coverage;

accidental death and dismemberment insurance; supplemental life insurance for

retirees and their dependents[7]; short term disability coverage, salary continuance and long term disability coverage. Doc. #36-4 at 9.


II.    Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party,

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323; see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991). "Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." Talley v. Bravo Pitino Rest., Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)  Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous

---

[7]With regard to supplemental life insurance, the handbook indicates that NCR provides life insurance coverage of "one times base pay". Doc. #36-4 at 10. Employees are also given the option to elect supplemental life insurance coverage, for the employee or the employee's spouse or children and for which the employee must pay. Id.

allegations, it is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex, 477 U.S. at 324.  "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." Mich. Prot. & Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted).  In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. Anderson, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller &

Kane, Federal Practice and Procedure Civil 3d § 2726 (1998).

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990); see also L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992), cert. denied, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment . . . ."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

III.   Analysis

Employee benefit or welfare plans are exempted from the vesting requirements that apply to pension plans. 29 U.S.C. § 1051(1). Therefore, employers "are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." Curtiss-Wright Corp. v. Schoonejongen, 514

U.S. 73, 78, 131 L. Ed. 2d 94, 115 S. Ct. 1223 (1995) (citation omitted).

Employers may choose to vest welfare benefits, however. Sprague v. GMC, 133

F.3d 388, 400 (6th Cir. 1998) (citing, among others, Inter-Modal Rail Employees

Ass'n v. Atchison, Topeka & Santa Fe Ry. Co., 520 U.S. 510, 137 L. Ed. 2d 763,

117 S. Ct. 1513, 1516 (1997)).  In determining whether the parties to a collective

bargaining agreement intended to vest those benefits, the Sixth Circuit instructs

that "[c]ourts can find that rights have vested under a CBA even if the intent to

vest has not been explicitly set out in the agreement.  CBAs may contain implied

terms, and the parties' practice, usage, and custom can be considered." Maurer v.

Joy Techs., Inc., 212 F.3d 907, 915 (6th Cir. 2000) (citing Consolidated Rail

Corp. v. Railway Labor Executives' Ass'n, 491 U.S. 299, 311, 105 L. Ed. 2d 250,

109 S. Ct. 2477 (1989); Golden v. Kelsey-Hayes Co., 73 F.3d 648, 655 (6th Cir.

1996)).

    As previously stated, the question presented in this litigation is whether the

retirees had a vested interest in the life insurance benefits, under the CBA.  In

resolving this question, the Court must discern the intent of the parties to that

Agreement. Int'l Union v. Yard-Man, 716 F.2d 1476, 1479 (6th Cir. 1983)

("[W]hether retiree insurance benefits continue beyond the expiration of the

collective bargaining agreement depends upon the intent of the parties.").  In

discerning that intent, "traditional rules for contractual interpretation are applied as

long as their application is consistent with federal labor policies." Id. (citing Textile

Workers Union v. Lincoln Mills, 353 U.S. 448, 456, 1 L. Ed. 2d 972, 77 S. Ct. 912 (1957)).

Traditional rules of contract interpretation require this Court to "first look to the explicit language of the collective bargaining agreement for clear manifestations of intent." Id. (citations omitted). "The court should also interpret each provision in question as part of the integrated whole. If possible, each provision should be construed consistently with the entire document and the relative positions and purposes of the parties." Id. at 1479-80 (citations omitted). As with all contract interpretations, the Court must construe the terms of the CBAs at issue in this case "so as to render none nugatory and avoid illusory promises." Id. at 1480. If ambiguity exists, the Court may look to other parts of the Agreement for guidance. For example, "[v]ariations in language used in other durational provisions of the agreement may, for example, provide inferences of intent useful in clarifying a provision whose intended duration is ambiguous." Id. Only if ambiguity still exists after considering the contract's language, the context of that language and traditional canons of contract construction, may the Court consider extrinsic evidence that sheds light on the parties' original understanding of the contract's terms. Prater v. Ohio Educ. Ass'n, 505 F.3d 437, 441 (6th Cir. 2007) (citing McCoy v. Meridian Auto. Sys., 390 F.3d 417, 422 (6th Cir. 2004)).

The Sixth Circuit has recently stated that, when interpreting CBAs to determine whether retirees' employee welfare benefits have vested, "to the extent

we put a thumb on the scales in this setting, it favors vesting." <u>Reese v. CNH Am.</u>

<u>LLC</u>, __ F.3d __ (6th Cir. 2009), 2009 U.S. App. LEXIS 16397, *11 (6th Cir. July

27, 2009).

> Although we do not apply a "legal presumption that benefits vest"
> and although we require plaintiffs to bear the burden of proving that
> vesting has occurred, we apply an "inference" that "it is unlikely that
> [welfare benefits] would be left to the contingencies of future
> negotiations," so long as we can find either "explicit contractual
> language or extrinsic evidence indicating" an intent to vest benefits.

<u>Id.</u> at **11-12 (quoting <u>Yolton v. El Paso Tenn. Pipeline Co.</u>, 435 F.3d 571, 580

(6th Cir. 2006)).  (This "inference" is commonly referred to as the "<u>Yard-Man</u>

inference", after the first case that applied such an inference, <u>UAW v. Yard-Man,</u>

<u>Inc.</u>, 716 F.2d 1476 (6th Cir. 1983)).[8]  The Appellate Court further explains that

_____

[8]The Court provides the following quote from the <u>Yard-Man</u> case, to give
further context to the "inference":

> Benefits for retirees are only permissive not mandatory subjects of
> collective bargaining.  As such, it is unlikely that such benefits, which
> are typically understood as a form of delayed compensation or reward
> for past services, would be left to the contingencies of future
> negotiations.  The employees are presumably aware that the union
> owes no obligation to bargain for continued benefits for retirees.  If
> they forego wages now in expectation of retiree benefits, they would
> want assurance that once they retire they will continue to receive
> such benefits regardless of the bargain reached in subsequent
> agreements.

<u>Int'l Union v. Yard-Man</u>, 716 F.2d 1476, 1482 (6th Cir. 1983) (citations omitted).
In a later case, the Sixth Circuit summarized the inference, in stating that retiree
benefits are "'in a sense 'status' benefits which, as such, carry with them an
inference . . . that the parties likely intended those benefits to continue as long as
the beneficiary remains a retiree." <u>Maurer v. Joy Techs., Inc.</u>, 212 F.3d 907, 915
(6th Cir. 2000) (quoting <u>UAW v. BVR Liquidating, Inc.</u>, 190 F.3d 768, 772 (6th

while this inference is insufficient "to find an intent to create interminable benefits," on its own, it is "a nudge in favor of vesting in close cases." Id. at *12 (citing Yolton, 435 F.3d at 579-80; Yard-Man, 716 F.2d at 1482).

The Court will begin its analysis with a review of two recently decided Sixth Circuit cases, with similar facts.  It will then conduct an analysis of whether the Agreement, in the present case, provides that the retirees had a vested interest in the subject life insurance benefits.

A.    Sixth Circuit Decisions in Yolton and Reese

The Sixth Circuit has recently decided two cases that are factually similar to the present one. Reese v. CNH Am. LLC, __ F.3d __, 2009 U.S. App. LEXIS 16397 (6th Cir. July 27, 2009); Yolton v. El Paso Tenn. Pipeline Co., 435 F.3d 571 (6th Cir. 2006).[9]  In both Reese and Yolton, the Appellate Court was faced with the question of whether employees' rights to lifetime health-care benefits vested upon their retirement.  In both cases, the Court ruled in favor of the retirees.

──────────────────

Cir. 1999)).

[9]Yolton concerned a preliminary injunction that would have prevented the employer from terminating or changing health care benefits for retirees, while in Reese, the Appellate Court was reviewing the district court's grant of summary judgment, in favor of the retirees, on the issue of continuing health care benefits. Yolton, 435 F.3d 571 (6th Cir. 2006); Reese, __ F.3d __, 2009 U.S. App. LEXIS 16397 (6th Cir. July 27, 2009).  The CBAs in the two cases were virtually identical, because the Yolton retirees worked at the same plant as the Reese retirees, and the Yolton employer (Tenneco) was the former parent company of the Reese employer (Case Corporation). Reese, 2009 U.S. App. LEXIS at *13.

In reflecting back in <u>Reese</u>, the Sixth Circuit provided the following summary of those portions of the <u>Yolton</u> CBA that it had found to be instructive in determining that the parties intended that the subject benefits were vested:

> [The Court] first relied on the fact that the company's benefits plans tied eligibility for pension benefits to eligibility for health-care benefits. . . . Other aspects of the 1990 CBA, <u>Yolton</u> determined, also suggested an intent to create lifetime benefits. For example, some benefits were subject to express durational limitations while retiree health benefits were not, prompting the court to conclude that "the inclusion of specific durational limitations in other provisions . . . suggests that retiree benefits, not so specifically limited, were intended to survive." And the <u>Yolton</u> court also pointed to language in the summary plan descriptions saying that "continued coverages will be the same as those that were in effect on the day preceding your retirement."

<u>Reese</u>, 2009 U.S. App. LEXIS 16397 at **14-15 (citing <u>Yolton</u>, 435 F.3d at 582-85) (other citations omitted).

When deciding <u>Reese</u>, the Sixth Circuit focused on similar portions of the subject CBA, in ruling in favor of the retirees.

> Like <u>Yolton</u> this case involves a CBA; it involves a health-care benefits plan with identical language concerning entitlement to benefits upon retirement; it ties eligibility for health benefits to eligibility for a pension; it does not contain a specific durational clause while other benefits provisions in the CBA contain such clauses; and above all it concerns employees who worked in virtually identical circumstances (apparently making the same products in the same plant) to the <u>Yolton</u> employees before each group retired.[10]

———————————

[10]In pertinent part, the <u>Yolton</u> CBA provided that "[e]mployees who retire under the Case Corporation Pension Plan for Hourly Paid Employees . . . shall be eligible" to receive health care benefits and added that "the Company shall pay the full premium cost of the above coverages," while the <u>Reese</u> CBA provided that "[e]mployees who retire under the Case Corporation Pension Plan . . . shall be eligible for" health care benefits and added that "[n]o contributions are required for

<u>Id.</u> at **15-16.[11]  In sum, therefore, the Court focused on three parts of the CBAs

when determining that the Agreements evinced sufficient intent to vest the health

care benefits, to wit:  (1) the language granting the entitlement to benefits upon

retirement ("shall be eligible"); (2) that eligibility for health benefits was tied to

eligibility for pension benefits ("employees who retire under the [pension plan]"

shall be eligible for health care benefits); and (3) that the CBA did not contain a

specific durational clause for health care benefits, yet it did contain such clauses

for other benefits provided by the CBA.


    B.   <u>Analysis</u>

    The Court will begin by summarizing first the Plaintiffs' arguments and then

the Defendant's.  Following that, the Court will turn to an analysis of whether

there exists a genuine issue of material fact as to whether the Agreement evinces a

clear intent to vest the retirees' life insurance benefits.

---

the Health Care Plans." <u>Reese</u>, 2009 U.S. App. LEXIS 16397 at *13 (citations to
internal record omitted).

    [11]Also, the <u>Reese</u> employer argued that an accompanying summary plan
description indicated there was no intent to vest, when it provided that "[a]n
amendment or termination of the . . . benefit plans may affect . . . the coverage[]"
of retirees. <u>Reese</u>, 2009 U.S. App. LEXIS 16397 at *16.  The Appellate Court
found this argument to be without merit, however, because there existed a
provision, in the summary plan description, which indicated that the CBA
provisions trumped any contradictory summary plan description provisions (with
the implication being that there was a contradictory provision in the CBA). <u>Id.</u> at
**17-18.

1.    Plaintiffs' Contentions

For ease of analysis, the Court will break down the Plaintiffs' arguments into five categories, as follows:[12]

- Yard-Man Inference.  The Yard-Man inference indicates that it is unlikely that the Plaintiffs would have previously left open the subject of continuing life insurance benefits to future negotiations, to which they would not have been parties. Doc. #36-2 at 23-24.

- Entitlement Language.  The handbook states that a retiree "will receive" life insurance, if the retiree meets certain requirements, and also that retirees "shall be provided" life insurance. Id. at 20-21.

- Durational Provisions.  The handbook provides that several benefits ended on the last day of employment (dental insurance, accidental death and dismemberment insurance, supplemental life insurance, short term disability, salary continuance and long term disability), but does not address the termination of life insurance benefits. Id. at 22.

- Tie Between Life Insurance Eligibility and Pension Eligibility.  In order to be eligible for retiree life insurance, an employee must be eligible to retire under the retirement plan and immediately begin receiving a monthly pension. Courts have found such a tie between pension benefits (which are vested by law) and welfare benefits to indicate an intent to vest. Id. at 22-23.

- "During the Life of this Agreement" Language.  In response to the Defendant's argument regarding the "reservation of rights" provision, as set forth below, Plaintiffs contend that said provision either applies only to the pension plan or to both the pension and benefit plans.  Since, by law, pension plans cannot be modified, there is an implication, here, that the benefit plan cannot be modified either. Doc. #40 at 15-16; Doc. #45 at 6-7.

_____

[12]The Plaintiffs also argue that the promise for retiree life insurance benefits is completely illusory, if it did not survive the termination of the CBA. Doc. #36-2 (Pls.' Mem. Supp.) at 21-22; Doc. #45 (Pls.' Reply Mem.) at 15.  Because the Court finds sufficient intent to vest the life insurance provisions in other provisions of the Agreement, as will be further explained *infra*, it need not consider whether this argument has merit.

15

Plaintiffs also assert that the language in question is a general durational clause that has no effect on vesting. Doc. #40 at 16-18; see also Doc. #45 at 11-12.


### 2. Defendant's Contentions

The Court will now similarly break down the Defendant's arguments, as

follows:

- Yard-Man Inference. Yard-Man does not apply because the Plaintiffs were active employees when the CBA was negotiated and, therefore, received benefits subject to the reservation of rights contained in the document. Doc. #35-2 at 19; Doc. #39 at 23.

- Entitlement Language. The "will receive" and "shall be provided" language is insufficient to establish vesting. Doc. #35-2 at 13-14. The Agreement contains no specific language indicating that benefits could not be eliminated, during a retiree's life. Id. at 14-15.

- Durational Provisions. Like life insurance, health care benefits also had no durational limit. Further, case law establishes that a benefit with an indefinite duration is not vested, for that reason alone. Doc. #39 at 19-20.

- Tie Between Life Insurance Eligibility and Pension Eligibility. The introductory chapter of the handbook, which contains the language relied upon by the Plaintiffs, is not the provision that governs benefits. Doc. #35-2 at 15 n.6 (referring to Doc. #35-11 at 12); Doc. #39 at 18-19. The specific provision that governs retiree benefits, which controls over the more general provision, does not mention pension eligibility. Doc. #44 at 15-16 (citing Doc. #35-11 at 13).

- "During the Life of this Agreement" Language Reservation of Right to Change. In providing that no change shall be made "during the life of this Agreement", Section 18.1(A) authorizes the Defendant to unilaterally eliminate both pension and welfare benefits after the CBA terminates. Doc. #35-2 at 16-17; Doc. #44 at 6, 9-10. Further, while an employer concededly cannot eliminate pension benefits based on past services, it can eliminate those for future services. Doc. #44 at 8-9; see also Doc. #39 at 23.

### 3.    Court's Analysis

In light of the factual similarities between the CBA and the Agreements in

Yolton and Reese, and based on the application of other, related Sixth Circuit case

law, the Court determines that no genuine issue of material fact exists as to

whether the CBA demonstrates a clear intent to vest the retirees' life insurance

benefits (the CBA does so demonstrate).  While none of the provisions cited by the

Plaintiffs may be sufficient, standing alone, to satisfy the Court of that intent, the

entirety of the Agreement, when read together, provides the necessary context for

that conclusion.


### a.    Yard-Man Inference

As to the Yard-Man inference, the Court agrees with the Plaintiffs.

Assuming there otherwise exists an intent to vest the life insurance benefits, Yard-

Man operates to provide an inference, in the Plaintiffs' favor, that it is unlikely that

they would have left life insurance benefits to the contingencies of future

negotiations. Reese v. CNH Am. LLC, __ F.3d __ (6th Cir. 2009), 2009 U.S. App.

LEXIS 16397, **11-12 (6th Cir. July 27, 2009).  The Defendant's argument that

Yard-Man does not apply, because the Plaintiffs were active employees when the

CBA was negotiated and, therefore, received benefits subject to the reservation of

rights contained in the document, is not well taken.  The question of whether the

Defendant reserved the right to terminate retiree life insurance benefits is a

separate question, which the Court will resolve forthwith.  Should the Court

conclude that the Agreement contains a provision enabling the Defendant to unilaterally eliminate welfare benefits after the CBA terminates, as the Defendant contends, it will not find that the parties intended to vest the life insurance benefits and, thus, the <u>Yard-Man</u> inference will not apply. Thus, assuming there otherwise exists an intent to vest the life insurance benefits, the <u>Yard-Man</u> inference operates in favor of the Plaintiffs.

        b.    <u>"Will Receive" and "Shall be Provided" Entitlement Language</u>

As to the CBA's "will receive" and "shall be provided" entitlement language, the Court finds this language to be virtually identical to the "shall be eligible" entitlement language in <u>Reese</u>, which the Sixth Circuit implicitly found to be sufficient to weigh in favor of finding an intent to vest. <u>Reese v. CNH Am. LLC</u>, __ F.3d __ (6th Cir. 2009), 2009 U.S. App. LEXIS 16397, *13 (6th Cir. July 27, 2009) (noting plan's use of "shall be eligible" language). As to the Defendant's argument that the Agreement does not contain specific language indicating that benefits could not be eliminated during a retiree's life, the Court notes that while the Sixth Circuit has found such language to weigh in favor of a finding of intent to vest, it has not required the same in finding that intent, assuming there are sufficient other indicators of such. <u>See</u> <u>e.g.</u>, <u>id.</u>; <u>compare</u> <u>Noe v. PolyOne Corp.</u>, 520 F.3d 548, 560 (6th Cir. 2008) (in finding intent to vest, considering agreement language, which provided that benefit "shall continue until the

18

individual's death", but not stating that such language is a prerequisite to finding said intent).

c. <u>Durational Provisions</u>

With regard to the Agreement's durational limits, the Court finds the Plaintiffs' argument to be compelling. Both <u>Yolton</u> and <u>Reese</u> highlight the significance of differing treatments of durational limitations. <u>Reese v. CNH Am. LLC</u>, __ F.3d __ (6th Cir. 2009), 2009 U.S. App. LEXIS 16397, *16 (6th Cir. July 27, 2009) (in finding an intent to vest, noting that the agreement "does not contain a specific durational clause [for health benefits] while other benefits provisions in the CBA contain such clauses"); <u>Yolton v. El Paso Tenn. Pipeline Co.</u>, 435 F.3d 571, 581-82 (6th Cir. 2006) (finding it noteworthy that the agreement contained "specific durational limitations for workers on lay-off and on maternity leave," but not for retiree health benefits); <u>see also</u> <u>Int'l Union v. Yard-Man</u>, 716 F.2d 1476, 1482 (6th Cir. 1983) ("[T]he inclusion of specific durational limitations in other provisions of the current collective bargaining agreement suggests that retiree benefits, not so specifically limited, were intended to survive the expiration of successive agreements in the parties' contemplated long term relationship.").

A review of the present Agreement, in this regard, presents a contrast between the way it treats various welfare benefits for retirees. The Agreement specifically provides that some benefits end on the last day of employment (e.g., dental insurance, accidental death and dismemberment insurance, supplemental life

19

insurance, short term disability, salary continuance and long term disability), yet it does not provide for any durational limit for either life insurance or health care benefits. The Defendant argues that the failure to exclude <u>health care</u> benefits works in its favor, in finding against an intent to vest <u>life insurance</u> benefits. Had the Defendant pointed to some evidence that indicated that health care benefits are not vested, this argument might have been persuasive, but since it has not done so, this attempted contrast proves to be unhelpful.

The Defendant continues its argument by pointing to the Sixth Circuit's decision in <u>Wood v. Detroit Diesel Corp</u>., in asserting that "a benefit with an indefinite duration is not for that reason vested." Doc. #39 at 19 (citing <u>Wood</u>, 2007 U.S. App. LEXIS 1309, 213 Fed. Appx. 463 (6th Cir. Jan. 17, 2007)). While it is true that the <u>Wood</u> Court, generally, came to this conclusion, that conclusion does not presently weigh in the Defendant's favor, in light of the contrasting durational clauses that are present in this case, but were not present in <u>Wood</u>. In <u>Wood</u>, the employer conceded that the retirees had vested interests in continuing health care coverage, but argued that its annual premium contributions were limited to specific, capped dollar amounts. <u>Id.</u> at **11-12. The question before the Appellate Court, then, was whether the document evinced an intent for the retirees to pay above-cap premium costs or, in other words, whether the retirees had a vested right to fully-funded health care coverage. <u>Id.</u> In determining that the collective bargaining agreement did not sufficiently answer the question (thus, forcing it to consider extrinsic evidence), the Court considered the

agreement's entitlement language, as pointed to by the Plaintiffs, and also

seemingly contradictory language, pointed to by the employer, which indicated that

retiree contributions were subject to change.[13] Id. at **9-13.  The agreement did

not, however, contain contrasting durational provisions, such as the ones presently

before this Court, nor did the Wood Court specifically consider the durational

aspects of the health care benefit, when rendering its decision therein.  Thus,

Wood is unhelpful to the Defendant, in rebutting the Plaintiffs' contention that the

contrasting ways in which the present Agreement addresses durational limits for

various welfare benefits weighs in favor of a finding of intent to vest the life

insurance benefits.


        d.      Tie Between Life Insurance Eligibility and Pension
              Eligibility

The parties next dispute whether the Agreements provide a tie between

---

[13]The only language pointed to by the Wood plaintiffs, in support of their vesting argument, indicated that "the health care coverages an employee has at the time of retirement . . . . shall be continued," and "the Corporation shall make contributions . . . . for health care coverages continued." Wood, 2007 U.S. App. LEXIS 1309, at *9 (finding that "[t]hese provisions support plaintiffs' claim, but fall short of evidencing an agreed intent to vest fully-funded lifetime health care coverage").

In contrast, the Wood employer pointed to language that advised retirees that "rates of payment, coverages, and terms and conditions of the program were all subject to change by [the employer] at any time on reasonable notice", that limited the employer's obligation to pay premiums to a limited sum per year, and that advised retirees that they "may be required to make monthly contributions." Id. at **11-12.

pension eligibility and life insurance eligibility, which courts have found to be an indicator of an intent to vest the life insurance benefits, since pension benefits are vested by operation of law. Noe v. PolyOne Corp., 520 F.3d 548, 558 (6th Cir. 2008) ("[L]anguage in an agreement that ties eligibility for retiree health benefits to eligibility for a pension indicates an intent to vest the health benefits."). As the Sixth Circuit has held, if a collective bargaining agreement "ties eligibility for retirement-[welfare] benefits to eligibility for a pension . . . there is little room for debate that retirees' [welfare] benefits vested upon retirement." McCoy v. Meridian Auto. Sys., 390 F.3d 417, 422 (6th Cir. 2004).

In arguing that the Agreement ties life insurance eligibility to pension eligibility, the Plaintiffs point to language (contained in the "General" chapter of the handbook, in a section entitled "Benefits After Retirement"), which provides that retirees will receive life insurance if they are both eligible to retire under the Retirement Plan and receive monthly pension benefits from the Retirement Plan. Doc. #36-4 at 7. In response, the Defendant contends that this language is contained in the general introductory chapter of the handbook, which does not govern retiree benefits, and that the specific provision that does govern such benefits (which, the Defendant contends, is the Retiree Benefits chapter) contains no such language. Doc. #35-11 at 13. Thus, the Defendant concludes, the more specific provision controls over the general provision and the Agreement, therefore, contains no tie between pension eligibility and life insurance eligibility.

In support of its argument, the Defendant points to <u>Hedrick v. Spitzer Motor City, Inc.</u>, 2007 Ohio 6820, ¶16, 2007 Ohio App. LEXIS 5971 (Ohio 8th App. Dist. Dec. 20, 2007), for the proposition that "where a general provision in a contract conflicts with a specific provision, the specific provision controls."  That case (and the Defendant) goes on to quote the Supreme Court, as follows:

> The ordinary rule in respect to the construction of contracts is this: that where  there are two clauses in any respect conflicting, that which is specifically directed to a particular matter controls in respect thereto over one which is general in its terms, although within its general terms the particular may be included.  Because when the parties express themselves in reference to a particular matter the attention is directed to that, and it must be assumed that it expresses their intent, whereas a reference to some general matter, within which the particular may be included, does not necessarily indicate that the parties had the particular matter in thought.

<u>Id.</u> (quoting <u>Mut. Life Ins. Co. v. Hill</u>, 193 U.S. 551, 24 S. Ct. 538, 48 L. Ed. 788 (1904)).

While the Court cannot argue with the Defendant's assertion that a specific contract provision will control over a conflicting, general provision, that legal principle does not work in the Defendant's favor, in this case.  As a review, the two clauses at issue provide as follows:

> <u>From "General" Chapter, "Benefits After Retirement" Paragraph</u>: Employees will receive retiree life insurance at no cost if they meet all of the following conditions:  (1) at least age 55; (2) eligible to retire under the Retirement Plan, and (3) retire from total and permanent disability or active employment, and immediately begin receiving monthly pension benefits from the Retirement Plan.

> <u>From "Retiree Benefits" Chapter, "Retiree Life Insurance" Paragraph</u>: Employees who terminate employment after age 55 for any reason

other than total and permanent disability with five or more years of service shall be provided life insurance coverage of $10,000. If an Employee retires after receiving total and permanent disability benefits that "draw down" the life benefit, the retiree life insurance coverage shall be the lesser of $10,000 or the amount of his or her reduced life benefit.

The first provision, which stipulates that an employee must be eligible to retire under the Retirement Plan and immediately begin receiving monthly pension benefits from the Retirement Plan before the employee will receive retiree life insurance benefits, presents a clear tie between pension eligibility and life insurance eligibility, in accordance with Sixth Circuit cases with similar fact patterns. E.g., Noe v. PolyOne Corp., 520 F.3d 548, 559 (6th Cir. 2008) (with one contract section providing that "[e]mployees who retire and who are eligible under the 1979 Employee Benefit Agreement for a Pension . . . shall receive the benefits described in this Article" and another section stating, "[e]mployees who retire and who are eligible under this Agreement for a pension . . . shall receive the Major Medical Benefits"); McCoy v. Meridian Auto. Sys., 390 F.3d 417, 419 (6th Cir. 2004) (with agreement stating, "[t]he Company shall contribute the full premium or subscription charge for Health Care . . . for (i) a retired employee . . . provided such retired employee is eligible for benefits under Article II of the Company's Hourly-Rate Employees Pension Plan"). In order for the Court to discount or ignore this language, as the Defendant advocates, it must conclude that this language is contained in a general provision of the CBA that conflicts with language in a more specific provision of the CBA. This the Court cannot do. Although the "tying"

24

language is arguably contained in a "general" provision (since the chapter is entitled "General"), there exists no conflict between the language contained in that paragraph and the language contained in the second paragraph, with the first provision identifying the retirees who are eligible for life insurance benefits and the second spelling out the amount of that benefit, for those retirees who were previously identified as being eligible for said benefits.[14]

In sum, therefore, the CBA contains a provision that ties eligibility for pension benefits with eligibility for life insurance benefits. As the Sixth Circuit has held, this leaves "little room for debate" that the retirees' life insurance benefits vested upon retirement. <u>McCoy v. Meridian Auto. Sys.</u>, 390 F.3d 417, 422 (6th Cir. 2004).

e.    <u>"During the Life of this Agreement" Language</u>

The final point of dispute between the parties is the language contained in Section 18.1(A) of the CBA. Specifically, the language in question reads as follows: "During the life of this Agreement, no change which will reduce or diminish the benefits or privileges provided by the plan may be made without the

---

[14]The second section provides the additional requirement that a retiree have "five or more years of service". It is unclear whether this presents a conflict with the earlier provision that requires eligibility under the pension plan. Since the parties have not brought this potential conflict to the attention of the Court, the Court will assume it is not germane to the issues presently before it.

agreement of the Union."[15]  The Defendant characterizes this language as a

reservation of a right to unilaterally eliminate both pension and welfare benefits,

after the term of the Agreement expires.  The Plaintiffs argue, in response, that

since the language definitely applies to pension benefits and since pension benefits

cannot, by law, be modified, the necessary implication is that, to the extent this

provision also applies to welfare benefits, they also cannot be modified.  The

Plaintiffs also assert that the "during the life of this Agreement" language is akin to

a general durational clause, which the Sixth Circuit has determined has no impact

on benefit vesting.

In support of its reservation of rights argument, the Defendant relies on the

Second Circuit's decision, in <u>American Federation of Grain Millers v. International</u>

---

[15]As a reminder, the entirety of the "during the life of this Agreement"
provision reads as follows:

> The Summary Plan Description:  Group Benefits Plan for employees of
> NCR Corporation at Dayton, Ohio represented by the UAW Local 1616
> and the Summary Plan Description:  Retirement Plan for employees of
> NCR Corporation at Dayton, Ohio represented by the UAW Local 1616
> will be provided for the employees represented by the Union at the
> Company's Dayton, Ohio facility as outlined and subject to the
> conditions in the Summary Plan Descriptions.  <u>During the life of this
> Agreement</u>, no change which will reduce or diminish the benefits or
> privileges provided by the plan may be made without the agreement of
> the Union, provided, however, that nothing hereby shall be construed
> to require the Company to bargain during the life of this Agreement,
> upon the request of the Union on any change in the plan.

Doc. #36-4 at 2 (emphasis added).

Multifoods Corp., 116 F.3d 976 (2d Cir. 1997).[16]  The collective bargaining

agreements, at issue in Grain Millers, provided as follows:

> An amended schedule of [medical] insurance coverage for all regular
> Employees covered by this Agreement has been established, which is
> to be provided without Employee or retiree contributions.  During the
> term of this Agreement there shall be no reduction in the schedule of
> benefits.

Id. at 981 (emphasis added by Court).  In determining that this provision

"unambiguously establishes that once the CBAs expired, Multifoods was free to

reduce retiree medical benefits," the Second Circuit determined that "[p]romising to

provide benefits for a certain period of time necessarily establishes that once that

time period expires, the promise does as well." Id. (citing In re Chateaugay Corp.,

945 F.2d 1205, 1208 (2d Cir. 1991)).

It is true that the present CBA and the one in Grain Millers contain almost

identical language, in the clause "during the term/life of this Agreement," which

precedes a restriction against reducing certain benefits granted therein.  The

similarities stop there, however.  The remainder of the provision, in Grain Millers,

---

[16]The Defendant states the Sixth Circuit has favorably cited Grain Millers, on
two occasions, in connection with the issue of welfare benefit vesting.  Although it
is true that the Sixth Circuit has done so, neither such case contained the specific
factual or legal question at issue here.  Rather, the cases cited Grain Millers in
support of the general proposition that welfare benefit plans do not automatically
vest and, thus, employers are generally free to modify or terminate the benefits
thereunder, if the agreement does not otherwise provide for vesting. Sears v.
Union Cent. Life Ins. Co., 2007 U.S. App. LEXIS 5975, *15 (6th Cir. Mar. 8,
2007) (citing, Grain Millers, among others); Yolton v. El Paso Tenn. Pipeline Co.,
435 F.3d 571, 578 (6th Cir. 2006) (citing Bittinger v. Tecumseh Prod. Co., 83 F.
Supp. 2d 851, 857 (E.D. Mich. 1998), which quoted Grain Millers).

clearly restricts the application of the "during the term" language to medical insurance coverage, which was the benefit in question in that case. Grain Millers, 116 F.3d at 981. In the present case, the remainder of the provision is convoluted and disjointed, making it impossible to tell what "plan" or "plans" NCR is not allowed to change "during the life of the Agreement." As the Plaintiffs assert, the word most definitely includes at least the pension plan, given that the sentence preceding the one in question refers to the same. Further, as the Plaintiffs also state, ERISA requires that pension benefits automatically vest, Noe v. PolyOne Corp., 520 F.3d 548, 555 (6th Cir. 2008), thus making it illogical that the provision could be read to grant the Defendant the power to unilaterally eliminate those benefits after the CBA terminates, as the Defendant contends.

The Defendant attempts to address this point by arguing that "[w]hile an employer cannot reduce or eliminate pension benefits that have already accrued based upon past service, the future accrual of pension benefits can be reduced or terminated in compliance with ERISA." Doc. #44 (Def.'s Reply Mem.) at 8 (citing Campbell v. BankBoston, N.A., 327 F.3d 1, 8-9 (1st Cir. 2003)). The Court will not devote time to discerning whether this stated legal principle is true, given that the Defendant quite clearly would be eliminating pension benefits that "have already accrued based upon past service" (for those employees retiring under the CBA), if the provision in question were interpreted to allow it to terminate those benefits after the expiration of the CBA. Thus, the Defendant's argument, on this

28

point, is not well taken.   The Court, therefore, finds the Second Circuit's decision,

in Grain Millers, to be unhelpful to the resolution of the question before it.

As the Plaintiffs suggest, however, the Court need not look to the Second

Circuit for assistance in this matter.  A recent Sixth Circuit case, Noe v. PolyOne

Corp., 520 F.3d 548 (6th Cir. 2008), proves to be sufficiently similar to the

present case, to help in resolving any question that might still be left unresolved

about the "during the life" language.  As background, on the issue of general

durational clauses, the Sixth Circuit has previously held that "[a]bsent specific

durational language referring to retiree benefits themselves, . . . general durational

language says nothing about [the vesting of] retiree benefits." Yolton v. El Paso

Tenn. Pipeline Co., 435 F.3d 571, 581 (6th Cir. 2006).  The Court goes on to

explain that

> [general] durational language only affects future retirees -- that is,
> someone who retired after the expiration of a particular CBA would
> not be entitled to the previous benefits, but is rather entitled only to
> those benefits newly negotiated under a new CBA.  Thus, the
> retirement package available to someone contemplating retirement will
> change with the expiration and adoption of CBAs, but someone
> already retired under a particular CBA continues to receive the benefits
> provided therein despite the expiration of the agreement itself.

Id.  Moving forward from this background, the Appellate Court, in Noe, was faced

with the decision of whether the following language constituted a general

durational provision:  "Effective as of April 21, 1979 and for the duration of this

Agreement, the Company will provide the following plan of hospital expense

benefits, hospital-medical benefits, surgical benefits, prescription drug benefits,

dental benefits and major medical benefits . . . ." Noe, 520 F.3d at 556 (emphasis

added). In resolving that question, the Court looked to the language used in four

previous cases, in each of which it found the language in question to be general

durational language:

- In Yolton, the durational clause stated that the insurance plan "will run
  concurrently with [the CBA] and is hereby made part of this Agreement."
  Yolton v. El Paso Tenn. Pipeline Co., 435 F.3d 571, 580 (6th Cir. 2006).

- In BVR, the agreement provided that benefits would be provided "at no cost
  to the Employees or retirees for the term of this Agreement." Int'l Union,
  United Auto., Aero. & Agric. Implement Workers of Am. v. BVR Liquidating,
  Inc., 190 F.3d 768, 774 (6th Cir. 1999).

- In Loral, the agreement provided that, "[e]ffective August 12, 1988, and for
  the duration of this Agreement thereafter, the Employer will provide the
  following Program of hospital benefits, hospital-medical benefits, surgical
  benefits and prescription drug benefits." Int'l Union, United Auto., Aero. &
  Agric. Implement Workers v. Loral Corp., 1997 U.S. App. LEXIS 2118, *8
  (6th Cir. Feb. 3, 1997) (emphasis added).

- In Weimer, the durational provision read, "this Agreement and all terms and
  conditions hereof shall terminate as of the end of the term." Weimer v.
  Kurz-Kasch, Inc., 773 F.2d 669, 675-76 (6th Cir. 1985).

Noe, 520 F.3d at 556. The Court concluded that the language, in the Noe

agreement, was "indistinguishable from the language we held to be a general

durational provision in Loral and is analogous to that involved in Weimer." Id. It

further held that, "[a]s with the durational clauses held to be general in Yolton,

Loral, BVR, and Weimer, the language in [the Noe agreement] does not specifically

refer to retiree benefits; rather, it refers generically to the benefits available for all

employees as well as retirees. Hence, the district court incorrectly held that [the

30

subject language] indicates an intent not to vest retiree health benefits." Id.

Likewise, this Court finds the language presently before it ("during the life of this Agreement") to be virtually indistinguishable from the language in Noe and Loral and analogous to that involved in Weimer.[17] The language does not specifically refer to retiree life insurance benefits, or even to retiree benefits, in general. Just as the Sixth Circuit concluded in Noe, because the present language "does not specifically limit the duration of retiree [welfare] benefits as required by Yolton and its progeny[, the Defendant's] argument that this general language indicates that Plaintiffs' [life insurance] benefits were not intended to vest fails." Id. at 557; see also id. at 557-58 ("[T]he entire case cannot be resolved on the basis of a durational clause that fails to reference retiree [welfare] benefits as is required by our case law.").

f.    Conclusion

---

[17]The Defendant attempts to distinguish Noe, in saying that its "shall be in effect for the life of this Agreement" language is a "general durational provision because it states the specific term during which the benefits will be in effect" and that "[n]othing whatever is said concerning the employer's unilateral right to change or terminate the benefits in question." Doc. #44 (Def.'s Reply Mem.) at 9. In so doing, the Defendant seems to be making a distinction between the Noe language, which states that certain benefits will be in effect for the life of the agreement (i.e., granting of benefits during the term), and the present language, which provides that no changes may be made to the benefits for the life of the Agreement (i.e., denying authority to make changes during the term). This Court thinks this is a distinction without a difference. As explained above, the focus in Noe is on whether the language specifically references the duration of the retiree benefits, as opposed to referencing employee benefits, in general.

The Court finds that there is no genuine issue of material fact as to the sufficiency of the demonstrated intent to vest the retiree life insurance benefits, in the 1995 CBA.  As is more fully explained in the preceding subparagraphs, this intent is clearly manifested in the Agreement's "will receive" and "shall be provided" entitlement language, the fact that the Agreement calls for the termination of some benefits (e.g., dental insurance, accidental death and dismemberment insurance, supplemental life insurance, short term disability, salary continuance and long term disability), but not for the termination of life insurance benefits, and the clear tie between pension eligibility and retiree life insurance eligibility.  Furthermore, the <u>Yard-Man</u> inference operates in favor of the retirees, in that it is unlikely that the employees would have left the retiree life insurance benefits to the contingencies of future negotiations.  Finally, the "during the life of this Agreement" language does not constitute a reservation of a right for the Defendant to unilaterally eliminate the life insurance benefits, after the expiration of the Agreement.  No recourse to extrinsic evidence is necessary.  Therefore, the Plaintiffs' Motion for Summary Judgment (Doc. #36) is SUSTAINED and the Defendant's Motion for Summary Judgment (Doc. #35) is OVERRULED.

IV.    <u>Conclusion</u>

Plaintiffs' Motion for Summary Judgment is SUSTAINED. Doc. #36.

Defendant's Motion for Summary Judgment is OVERRULED. Doc. #35.  Judgment

is to be entered on behalf of the Plaintiffs and against the Defendant.


The above captioned cause is hereby ordered terminated upon the docket

records of the United States District Court for the Southern District of Ohio,

Western Division, at Dayton.

August 27, 2009


       /s/ Walter Herbert Rice

WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT


Copies to:
Counsel of record